UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CV-61153-RUIZ/STRAUSS

**DRONE NERDS FRANCHISING, LLC,**

    Plaintiff,

v.

**KRISS CHILDRESS,** *et al.*,

    Defendants.
_____/

**KRISS CHILDRESS,**

    Counter-Plaintiff,

v.

**DRONE NERDS FRANCHISING, LLC,**

    Counter-Defendant.
_____/

## REPORT AND RECOMMENDATION ON IMPLEADER DEFENDANT'S MOTION TO DISMISS

**THIS CAUSE** comes before me upon Impleader Defendant Drone Nerds, Inc.'s ("DNI's") Motion to Dismiss ("Motion to Dismiss") (DE 111). DNI seeks to dismiss the Impleader Complaint filed by Defendant/Judgment Creditor Kriss Childress ("Childress") (DE 98). The District Court has referred this case to me for rulings on all pre-trial, non-dispositive matters and for issuance of a Report and Recommendation on any dispositive matters pursuant to 28 U.S.C. section 636(b), Federal Rule of Civil Procedure 72, and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida. (DE 100). I have reviewed the Motion to Dismiss, the response ("Response") (DE 115), the reply ("Reply") (DE 119) and the record in this case. Being otherwise duly advised, I respectfully **RECOMMEND** that the Motion to Dismiss (DE 111) be

**GRANTED** for the reasons stated herein.

## I. Background

Childress obtained a final default judgment of $455,752.22 plus post judgment interest to Childress, and against Drone Nerds Franchising, LLC ("DNF"). (DE 82 at ¶¶1-2). Childress also obtained an award of $20,947.50 in attorney's fees. (DE 90). On June 25, 2021, Childress filed a motion to initiate proceedings supplementary. (DE 94). In the motion, Childress stated that post-judgment discovery confirmed that DNF was "simply a shell company created by [DNI] to engage in a fraudulent franchise sales scheme." (DE 94 at 2). According to Childress, DNF "was never properly capitalized and had no infrastructure, resources, or ability to support franchisees." (DE 94 at 2). Childress claimed that DNI transferred funds in and out of DNF's bank accounts to give the false appearance that DNF was properly capitalized when it did not have any assets. (DE 94 at 2). As such, Childress contended that DNI should be held fully responsible for DNF's judgment and sought to implead DNI as an additional party to the post-judgment proceedings. (DE 94 at 3). On July 15, 2021, Childress filed a motion to compel the production of financial documents subpoenaed from DNI, who at the time was a non-party. (DE 95). DNI objected to the subpoena and has refused to respond, citing the confidential nature of the records. (DE 95 at 2). On July 26, 2021, I entered an order granting Childress's motion to initiate proceedings supplementary and ordering Childress to separately file his Impleader Complaint. (DE 97).

On July 29, 2021, Childress filed his Impleader Complaint against DNI and set out allegations of its fraudulent activity. (DE 98). The Impleader Complaint alleges that DNF and DNI "concocted a scheme to defraud Childress into purchasing a franchise from [DNF] by engaging in improper fraudulent activity." (DE 98 at ¶16). Childress alleged that he was provided a Franchise Disclosure Document which represented that DNF had $100,000 in total cash assets.

(DE 98 at ¶18). However, Childress later discovered that DNI transferred $100,000 into and out of DNF's bank account on the same day. (DE 98 at ¶20-25). The Impleader Complaint also alleges that DNF is the "alter ego" of DNI. (DE 98 at ¶12, 27-29). It makes several factual contentions to support this characterization:

- DNI retains complete control over DNF, such that DNF is not operated separately and distinctly from DNI. (DE 98 at ¶16).

- DNF and DNI both share common ownership and management: President, Alex Nafissy; Vice-President, Robert Weitzner; and Secretary, Lauren Schneiderman. (DE 98 at ¶31).

- DNF and DNI share the same office space and operate out of the same office (5553 Anglers Avenue, Suite 109 Dania, Florida 33312). (DE 98 at ¶38).

- DNF does not own any "hard assets" and does not engage in "a substantial number of monetary transactions within its bank account." (DE 98 at ¶39, 40).

- DNF never held any formal meetings and no formal membership interest documents were created at the time of its incorporation. (DE 98 at ¶41-42).

Ultimately, the Impleader Complaint brings one count for "Alter Ego/Piercing the Corporate Veil" seeking to hold DNI liable for the debts of the judgment creditor, DNF. (DE 98 at 8).

On September 6, 2021, DNI, the Impleader Defendant, filed a Motion to Dismiss the Impleader Complaint for Failure to State a Claim Upon Which Relief May Be Granted (With Incorporated Request for Judicial Notice) ("Motion to Dismiss"). (DE 111). DNI argues that Childress's Impleader Complaint must be dismissed because it has not alleged that DNI is a member, owner, or manager of DNF and "a claim for veil-piercing based on alter ego exists only against controlling or majority shareholders or owners of the entity that the plaintiff seeks to disregard." (DE 111 at ¶3) (citing *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330

(11th Cir. 2011)). DNI also states that Childress has made the same claim he attempts to pursue in this court in the related state court proceedings twice and that the claim has been twice dismissed by the state court. (DE 111 at ¶5). Thus, DNI requests that this Court take judicial notice of several documents in the related state court proceedings of *Childress, et al. v. Drone Nerds Franchising, LLC, et al.*, Case No. CACE 20-017049 (Fla. 17th Jud. Cir.). (DE 111 at 9). These documents are: the state court Complaint, the First Amended Complaint, the trial court's Order on the Motions to Dismiss the Amended Complaint, and the Second Amended Complaint. (DE 111-1, 111-2, 111-3, 111-4).

On the same day DNI filed its Motion to Dismiss the Impleader Complaint, it also filed a Motion to Stay Discovery Pending Ruling on Defendant's Dispositive Motion to Dismiss [DE 111] For Failure to State a Claim Upon Which Relief May Be Granted ("Motion to Stay"). In the Motion to Stay, DNI argues that its "well-taken, substantial, and dispositive motion to dismiss is good cause to stay discovery and . . . to defer ruling on the pending motion to compel." (DE 113 at ¶9).

In response to DNI's Motion to Dismiss, Childress argues that the motion fails because it assumes that the corporate veil can never be pierced horizontally between siblings under an alter ego theory of liability. However, according to Childress, neither the Florida Supreme Court nor the Eleventh Circuit have ever "squarely" addressed the question. (DE 115 at 3) (quoting *Molinos Valle Del Cibao, C. por A.*, 633 F.3d at 1349; *Eitzen Chem. (Singapore) PTE, Ltd. v. Carib Petroleum*, 749 F. App'x 765, 771 (11th Cir. 2018)). Childress also argues that this Court should deny DNI's request to take judicial notice of the state court proceedings because they are irrelevant—Childress claims that he is not pursuing DNI in the state court action based on an alter

ego theory. (DE 115 at 10).<sup>1</sup> In response to DNI's Motion to Stay, Childress argues that DNI is simply seeking to "hide behind its Motion to Dismiss to stall discovery." (DE 116 at 5). Childress also notes that the requested discovery is clearly relevant to the pursuit of his judgment against DNF and that DNI has not alleged that producing the requested documents would be a burden. (DE 116 at 3).

## II. Legal Standard

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). When a fraud claim is alleged, the complaint "must satisfy the heightened pleading standards embodied in Federal Rule of Civil Procedure 9(b), which requires the plaintiff to 'state with particularity the circumstances constituting fraud.'" *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1216 (11th Cir. 2020) (citation omitted). To do so, the plaintiff must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiff[ ]; and (4) what the defendants gained by the alleged fraud." *Id.* (citation omitted).

---

[1] For the sake of context, I will take judicial notice of the State court documents, as requested by DNI, and accept that the documents are true copies of the items on the state court docket. *See Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1370 (S.D. Fla. 2014); *see also See Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651-53 (11th Cir. 2020) (stating that, under Federal Rule of Evidence 201, courts can take judicial notice of publicly filed documents from related state court proceedings); *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015) (same). However, I do not "take judicial notice of the various arguments made by the parties relative to the meaning and import of the documents." *Garcia*, 43 F. Supp. 3d at 1370. Ultimately, the State court documents are of little relevance, given that the State court did not expressly address the issue before the Court here. My recommendation detailed below is based on the case law discussed herein.

To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679)).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Courts must accept the factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1229 (11th Cir. 2019); *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019). But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

### III.  Analysis

"A corporation is a legal entity . . . capable of entering contracts and doing business in its own right. The purpose of this fiction is to limit the liability of the corporation's owners, whether they be individuals or other corporations." *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011). Courts have utilized the term "piercing the corporate veil" to describe

when a plaintiff seeks to disregard the legal entity and hold the corporation's owners liable for the actions or debts of the corporation. *See id.* In the typical case of piercing the corporate veil, a plaintiff seeks to hold a parent company liable for the debts or actions of its subsidiaries. *See id.* at 1350; *SEB S.A. v. Sunbeam Corp.*, 148 Fed. Appx. 774, 800 (11th Cir. 2005); *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1320 (11th Cir. 1998); *Salinero v. Johnson & Johnson*, 1:18-CV-23643-UU, 2019 WL 4585215, at *2 (S.D. Fla. Sept. 20, 2019); *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1116 (Fla. 1984). In another common veil-piercing scenario, a plaintiff seeks to hold the shareholders or owners individually liable for the debts or actions of their company. *See Eckhardt v. United States*, 463 Fed. Appx. 852, 856 (11th Cir. 2012); *Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc.*, 833 F.2d 1484, 1486 (11th Cir. 1987) (finding that a sufficient basis existed to hold majority shareholder liable for a corporation's contract debt); *Gasparini*, 972 So. 2d at 1055.

This case presents a less-common, and legally murkier, scenario – a party (Childress) seeking to hold a corporation (DNI) liable for the actions and debts of its sister or sibling corporation (DNF),[2] termed "horizontal veil piercing."[3] *See Eitzen Chem. (Singapore) PTE, Ltd.*, 749 Fed. Appx. at 771 n.7. Of note, courts are split on the propriety of horizontal veil-piercing claims. *See, e.g., Eitzen Chem. A/S v. Carib Petroleum, a Bahamian corp.*, 10-23512-CIV, 2016 WL 7486017, at *22 n.27 (S.D. Fla. Dec. 29, 2016) (finding "more persuasive" the rationale that permits horizontal veil piercing but acknowledging that the showing would be more difficult than

---

[2] Black's Law Dictionary defines a "sister corporation" as "[o]ne of two or more corporations controlled by the same, or substantially the same, owners." *Sister Corporation*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[3] A judgment creditor may allege a veil-piercing claim in supplementary proceeding to hold another entity or individual liable for a judgment debtor's debts. *See Floridians for Solar Choice, Inc. v. PCI Consultants, Inc.*, 15-CV-62688, 2019 WL 2297524, at *2 (S.D. Fla. May 30, 2019); *Ocala Breeders' Sales Co. v. Hialeah, Inc.*, 735 So. 2d 542, 543 (Fla. 3d DCA 1999).

general veil-piercing claims); *Madison Cnty. Commc'ns Dist. v. CenturyLink, Inc.*, CV 12-J-1768-NE, 2012 WL 6685672, at *4 (N.D. Ala. Dec. 20, 2012) (noting that "generally the corporate veil cannot be pierced horizontally between sibling corporations"); *Minno v. Pro–Fab, Inc.*, 905 N.E.2d 613, 617 (Ohio. 2009) (refusing to permit the plaintiff to pierce the corporate veil of one corporation to reach a sister corporation); *Dill v. Rembrandt Grp., Inc.*, 474 P.3d 176, 186 (Colo. App. 2020) (concluding that Colorado law permits horizontal veil piercing). Thus, whether Childress's claim is viable depends significantly on what jurisdiction's law applies.

Unfortunately, neither party provides any choice of law analysis in its briefing. DNI asserts that Florida law applies, without any thorough explanation as to why. Childress's Response impliedly (although not explicitly) accepts the premise that Florida law applies. While the Response relies primarily on an Eleventh Circuit case applying federal common law (and cites, in a footnote, a variety of federal court decisions), its reasoning hinges largely on the assertion that the elements of veil-piercing under Florida law and federal common law are "substantially similar." *See* (DE 115 at 4) (citing *Alvarez Galvez v. Fanjul Corp.*, 20-CIV-80123-RAR, 2021 WL 1390363, at *10 (S.D. Fla. Apr. 12, 2021)). Based on the parties' apparent agreement, or at least the lack of any countervailing argument, I will assume that Florida law, in fact, governs. *See Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1208 (11th Cir. 2018) (stating that a party may waive choice-of-law arguments and that "general references to a choice-of-law analysis" do not sufficiently preserve the arguments); *Wallace v. NCL (Bahamas) Ltd.*, 733 F.3d 1093, 1104 n.10 (11th Cir. 2013) (finding that the parties waived choice of law issues by agreeing that Florida law applied).

In Florida, to "pierce the corporate veil" a plaintiff must prove the following:

(1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the

> shareholders were in fact alter egos of the corporation;
>
> (2) the corporate form must have been used fraudulently or for an improper purpose; and
>
> (3) the fraudulent or improper use of the corporate form caused injury to the claimant.

*Molinos*, 633 F.3d at 1349 (citing *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008)). Notably, this standard refers to a **shareholder** dominating and controlling the corporate entity. *Id.* As the Eleventh Circuit observed in *Molinos*, the Florida Supreme Court has not squarely addressed the question of whether Florida law would allow veil-piercing against a non-shareholder. *Id*. In the absence of a clear determination by the Florida Supreme Court, a federal court applying Florida law must look to the decisions of Florida's intermediate appellate courts to discern the state of Florida law and how the Florida Supreme Court would decide the question. *See id.* (citing *Bravo v. United States,* 577 F.3d 1324, 1325 (11th Cir. 2009); *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.,* 420 F.3d 1317, 1326 n. 5 (11th Cir. 2005); *Allstate Life Ins. Co. v. Miller,* 424 F.3d 1113, 1116 (11th Cir. 2005)).

In *Molinos*, the Eleventh Circuit considered an attempt to pierce the corporate veil of two corporations to hold individuals serving on their boards of directors liable for the corporations' actions. *Id.* at 1348-49. The individuals retorted that the veil-piercing claim failed as a matter of a law because they were not shareholders of the corporations – a parent corporation owned the companies at issue. *Id*. at 1349. The Eleventh Circuit surveyed Florida District Court of Appeals cases and several leading Florida Supreme Court precedents to predict whether the Florida Supreme Court would allow a veil-piercing claim against a non-shareholder. *Id.* at 1349-51. Following its survey of Florida law, the *Molinos* court predicted that the Florida Supreme Court would not allow such a claim against a non-shareholder. *Id*. at 1351. The Eleventh Circuit based

its conclusion on Florida law's particular emphasis on ownership in its veil-piercing decisions. *See id.* at 1349-50 (discussing *Dania Jai–Alai Palace, Inc., v. Sykes,* 450 So. 2d 1114 (Fla. 1984)).

As DNI's Reply argues, an interpretation of Florida state law by the Eleventh Circuit remains binding law within the Eleventh Circuit absent a subsequent decision by Florida's appellate courts, an *en banc* decision of the Eleventh Circuit, or a decision of the U.S. Supreme Court casting doubt on that interpretation. *Kerrivan v. R.J. Reynolds Tobacco Co.*, 953 F.3d 1196, 1212 (11th Cir. 2020). Childress has not pointed to any such decision casting doubt on *Molinos*'s interpretation, and this Court has found none. Therefore, this Court is bound to follow the interpretation of Florida law articulated in *Molinos*, which dictates that Childress's attempt to pierce DNF's corporate veil to reach the assets of a non-shareholder sister company must fail.

Childress relies on four cases to support his claim, but they are all either unpersuasive, non-binding, or distinguishable. Childress primarily relies on *Eitzen Chem. (Singapore) PTE, Ltd. v. Carib Petroleum*, 749 Fed. Appx. 765, 771 (11th Cir. 2018), citing its observation that the Eleventh Circuit has yet to address horizontal veil-piercing and its assumption that horizontal veil-piercing is possible. However, *Eitzen* does little to affirmatively support Childress's position. As Childress notes, *Eitzen* (an unpublished decision) merely assumed, without deciding, that a corporation could be held liable for its sister corporation's debts based on the same factors as in the parent-subsidiary context because the parties had not raised the issue on appeal. *Id*. at 771 n.7. More importantly, *Eitzen* applied federal common law, not Florida law. *Id*. at 770. Although Childress attempts to smooth over this distinction with the observation that "the veil-piercing elements under federal common law are substantially similar [to Florida law]," *Alvarez Galvez*, 2021 WL 1390363, at *10, this argument is unavailing. *Alvarez Galvez* involved veil-piercing in a parent-subsidiary situation; it was not addressing the specific question at issue here. *See Alvarez Galvez*, 2021 WL

1390363, at *10. Therefore, its observation of the similarity between the basic elements of veil-piercing in federal common law and Florida law does little to answer how Florida courts would interpret one of those elements in this specific situation. Moreover, even if the two bodies of law are "substantially similar," that does not make them identical, and because this is a sufficiently unsettled question, that distinction is worth making. *See Bartram, LLC v. C.B. Contractors, LLC*, 1:09-CV254-SPM/AK, 2010 WL 11561493, at *2 (N.D. Fla. June 23, 2010) (stating that the federal common law and Florida common law veil piercing standards are similar but not identical). Childress's other cited cases are similarly unavailing because they do not apply Florida law. *See Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1237 (10th Cir. 2017) (applying federal law); *Cont'l Cas. Co. v. Symons*, 817 F.3d 979, 982 (7th Cir. 2016) (applying Indiana law); *d'Amico Dry d.a.c. v. Nikka Fin., Inc.*, 429 F. Supp. 3d 1290, 1301 (S.D. Ala. 2019) (applying federal common law and assuming, without analysis, that horizontal veil-piercing is permitted). Ultimately, since the Court is obligated to apply Florida law, the assumption regarding horizontal veil-piercing in *Eitzen* and the other cited decisions following law in other jurisdictions do little to counter or cast doubt upon the binding analysis in *Molinos*. Therefore, I find that Childress's horizontal veil-piercing theory fails.

## CONCLUSION

For the reasons stated above, I respectfully **RECOMMEND** that DNI's Motion to Dismiss (DE 111) be **GRANTED** with prejudice.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge. Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and

shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida, this 15th day of November 2021.

Jared M. Strauss
United States Magistrate Judge